IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FERRIS MFG. CORP., <br><br> Plaintiff, <br><br> v. <br><br> ROY CARR and CURALINE, INC., <br><br> Defendants. | No. 1:14-CV-4663 |

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

This is a re-filing of a previously dismissed action brought by Plaintiff Ferris Mfg. Corp. ("Ferris") against Defendants Roy Carr ("Carr") and Curaline, Inc. ("Curaline") in Texas. The United States District Court for the Northern District of Texas dismissed this action for lack of jurisdiction on June 16, 2014. *See Ferris Mfg. Corp. v. Carr, et al.*, No. 4:14-cv-121-O (N.D. Tex.) (Docket Entry No. 31).

In its re-filed Complaint ("Complaint" or "Compl.") before this Court, Ferris purports to assert three (3) claims: (i) breach of fiduciary duty against Carr, (ii) breach of contract against Carr, and (iii) violation of the Lanham Act against Curaline.[1] As shown below, each of these purported claims is legally insufficient.

Specifically, Ferris's purported claims for breach of fiduciary duty and breach of contract are time-barred and, even if they were not, Ferris has not alleged (and cannot allege) a breach of fiduciary duty or a breach of contract by Carr. Similarly, Ferris's purported claim for violation

---

[1] Ferris's Complaint in Texas contained five (5) purported causes of action: (i) breach of fiduciary duty, (ii) breach of contract, (iii) conversion, (iv) civil conspiracy, and (v) violation of the Lanham Act. Carr and Curaline also moved to dismiss all these claims under Federal Rule of Civil Procedure 12(b)(6), but that motion was not ruled upon because of the lack of personal jurisdiction. Ferris apparently chose to abandon its purported claims for conversion and civil conspiracy when it re-filed its Complaint in this Court. (*See id.* (Docket Entry No. 1).)

of the Lanham Act against Curaline is premised entirely on Ferris's legally insufficient claims against Carr and, therefore, fails on its face. Ferris also does not allege an independent claim for violation of the Lanham Act by Curaline because none exists. Respectfully, Ferris's Complaint should be dismissed in its entirety, with prejudice.

### A.     Summary of the Allegations

According to the Complaint, Ferris is a company that develops and sells wound care products, including PolyMem® and several other branded products.[2]  (Compl. ¶¶ 10, 12.)  The formulation for PolyMem® was invented and patented by Robert W. Sessions, the founder and former CEO of Ferris.  (*Id.* ¶ 13.)

Carr joined Ferris as a chemical consultant in 1987.  (*Id.* ¶ 17.)  Carr signed (as a consultant/contractor) the Nonemployee Security Agreement attached to Plaintiff's Complaint as Exhibit B.  (*Id.* ¶ 27, Ex. B.)  However, the Nonemployee Security Agreement expired pursuant to its own terms on August 6, 1997.  (*Id.* Ex. B, § 1(c).)

Throughout the years that followed, Carr moved into various other roles and positions at Ferris, including (i) Manager (1991), (ii) General Manager (1993), (iii) "Advisor to President" Sessions (1996), (iv) Vice President of Operations/General Manager (1999), (v) Chief Operating Officer (2002) and (vi) "Aide to CEO" Sessions (2003).  (*Id.* ¶¶ 17, 21, 26.)  As a member of Ferris's senior management team, Ferris asserts that Carr was involved in the conception and development of Ferris's patent portfolio concerning wound dressings, and was co-inventor of a half dozen of Ferris's patents.  (*Id.* ¶ 18.)  Ferris further asserts that Carr was also responsible for

---

[2] By summarizing Ferris's allegations herein, Carr and Curaline do not admit any of those allegations, even though they must be taken as true for the limited purpose of deciding their Motion to Dismiss under Rule 12(b)(6). Carr and Curaline reserve their right to deny the allegations against them including, without limitation, the end of Carr's employment at Ferris (he was abruptly terminated) and Curaline's alleged sales (it has none).

2

Ferris's patent procurement program and assisted Ferris's outside patent counsel with "Office Actions" and pending patent applications. (*Id.* ¶ 19.) Carr was also involved with Ferris's product certification registration with the FDA. (*Id.* ¶ 20.)

As Vice President of Operations and General Manager, Carr administered the "Ferris Employee Confidentiality, Assignment of Inventions and Nonsolicitation Agreement" and witnessed the signing of these agreements by others on behalf of the company. (*Id.* ¶¶ 28–30.) However, Carr did not personally sign the "Ferris Employee Confidentiality, Assignment of Inventions and Nonsolicitation Agreement." (*Id.* ¶ 31, Ex. C.)[3] Further, while Carr acknowledged receipt of the Ferris Employee Handbook, the Employee Acknowledgment signed by Carr on April 24, 2003 expressly states that the "Employee Handbook does not establish any contractual relationship" between Carr and Ferris. (*Id.* ¶ 31, Ex. D.)

Carr's employment with Ferris ended on June 6, 2003. (*Id.* ¶ 32.) More than a month after his employment with Ferris ended, Carr and another former Ferris employee filed a confidential provisional patent application with the United States Patent and Trademark Office ("USPTO"), No. 60/487,666 for "Novel Polyurethane Formulations and Applications." (*Id.* ¶ 33.) Nearly one year later, on June 30, 2004, Carr filed a continuing application claiming the benefit of Provisional Application 60/487,666 for a "[f]oam-layered dressing, a method for making the same, a method for applying a dressing, a foam composition, and a foam layer composition produced by a process," in which Carr claimed he had invented a two-layer foam dressing (Pub. No. US2005/0013987) (hereinafter the "'987 Patent Application"). (*Id.* ¶ 33, Ex. E.) In the prosecution of the '987 Patent Application, the Patent Examiner cited several Ferris patents, including U.S. Patent Nos. 5,064,653, 5,065,752 and 5,916,928, as prior art. (*Id.*)

---

[3] The only parties to Exhibit C are Ferris and "Paul P. Zimmerman." (*Id.*)

3

Carr was the co-inventor on each of these patents. (*Id.*) The USPTO rejected claim 1 of Carr's patent application as "anticipated and obvious" over Ferris's 5,254,301 patent. (*Id.* ¶ 36.)

Ferris was not aware Carr had filed the '987 Patent Application in 2003. (*Id.* ¶ 37.) However, the USPTO published the '987 Patent Application to the general public on January 20, 2005, where it has remained public. (*Id.*, Ex. E.) Carr assigned his rights to the '987 Patent Application to RC Medical, LLC, for whom he was serving as President. The '987 Patent Application was subsequently abandoned. (*Id.* ¶ 38.)

Nearly a full decade after his employment with Ferris ended, Carr became the Chief Operating Officer of Curaline in November 2012. (*Id.* ¶¶ 8, 39.) Curaline recently began marketing a line of layered foam products used for deep wounds called DevraSorb®, which Curaline's marketing literature and website claim are "patent-pending." (*Id.* ¶¶ 40–42.) In its November 30, 2012 510(k) submission to the Department of Health and Human Services, Curaline listed PolyMem® as DevraSorb®'s "principal predicate." (*Id.* ¶ 43.)

In mid-2013, Ferris's counsel wrote letters to Curaline's CEO, Haitham Matloub, "advising [Curaline] of Carr's ongoing duty to keep Ferris's proprietary information confidential." (*Id.* ¶ 44.) In its letter, Ferris did not disclose that the only signed agreement between Ferris and Carr expired in 1997, nor did Ferris disclose that, under the express terms of the expired agreement, Ferris did not consider any information to be confidential or proprietary after the expiry of ten (10) years. (*Id.* Ex. B, § 1(c).)

**B.** **Standard**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). However, a court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. A court does not accept as true conclusory allegations, unwarranted factual inferences or legal conclusions. *Reger Dev.,* 592 F.3d at 764. A court considers documents attached to the pleading, which permits the court to determine whether the plaintiff is entitled to relief. *Id.* Lastly, when a plaintiff's allegations reveal that its claim is barred by the relevant statute of limitations, the complaint may be dismissed for failure to state a claim. *Brown v. Chicago Mun. Emps. Credit Union*, No. 13 C 2597, 2014 WL 1613037, at *2 (N.D. Ill. Apr. 17, 2014) (dismissing claim under Rule 12(b)(6) because plaintiff's complaint demonstrated that the claim was time-barred); *Stewart Title Guar. Co. v. Valuation Int'l, Inc.*, No. 12 C 8918, 2013 WL 5587293, at *3–4 (N.D. Ill. Oct. 10, 2013) (same).

      **1.**     **Counts I and II of Ferris's Complaint are Time-Barred and Should Be Dismissed**

As an initial matter, Counts I (breach of fiduciary duty) and II (breach of contract) of Ferris's Complaint are, on their face, time-barred and should be dismissed. Based on the

5

Complaint allegations alone, the applicable statutes of limitation on each of these claims have long since run.

Under Illinois law, the applicable limitation periods for Counts I and II are as follows: (i) breach of fiduciary duty—five (5) years (*see Armstrong v. Guigler*, 673 N.E.2d 290, 298 (Ill. 1996)) and (ii) breach of written contract—ten (10) years (*see* 735 ILCS 5/13-206).[4] Since Ferris pled that all of the alleged conduct forming the basis for Counts I and II occurred (if at all) in 2003 or earlier, each of the claims asserted in the Complaint, which was not filed until February 19, 2014, is time-barred.[5]

In response, Ferris is likely to invoke Illinois' "discovery rule" to excuse its delay in asserting decade-old purported claims. However, such an attempt would be unavailing. Although the discovery rule can operate to toll the running of a limitations period until a person knows or reasonably should know of his or her injury and that it was wrongfully caused, the Illinois Supreme Court has held that a plaintiff must conduct a diligent inquiry into potential causes of action and may not slumber on his or her rights. *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 979–81 (Ill. 1982); *Nolan v. Johns-Mansville Asbestos*, 421 N.E.2d 864, 868 (Ill. 1981). Moreover, to successfully toll the running of the statute of limitations, a plaintiff must do more than plead and rely upon mere conclusions. *Logan v. Wilkins*, 644 F.3d 577, 582–83 (7th Cir. 2011). *See also Stewart Title*, No. 12 C 8918, 2013 WL 5587293, at *3.

---

[4] As reflected in Exhibit C to the Complaint, at all relevant times Ferris was located in Illinois and considered itself to be an "Illinois resident." (Compl. Ex. C, ¶ 13.) Therefore, Illinois law governs all of Ferris's claims except for the Lanham Act, which is governed by federal law.

[5] For purposes of this argument only, Carr and Curaline assume Ferris's Complaint would relate back to the initial filing of this action in Texas on February 19, 2014.

6

Here, Ferris offers nothing more than bald-faced conclusions by alleging that it "had no duty to inquire" about Carr's alleged actions, which is not only self-serving but also contrary to Illinois law. (Compl. ¶ 37.) Further, Ferris's allegation that Carr's '987 Patent Application—filed in July 2003—was "not open to the public" is belied by Ferris's own exhibits to the Complaint. (*Id.* Ex. C.) Exhibit C to Ferris's Complaint shows that the '987 Patent Application was published for the entire world to see by the USPTO on "January 20, 2005."[6] (*Id.* Ex. C.) Publication of the '987 Patent Application constitutes constructive notice for purposes of the running of the statute of limitations. *WesternGeco v. Ion Geophysical Corp.*, No. 09-cv-1827, 2009 WL 3497123, at *5 (S.D. Tex. Oct. 28, 2009) (rejecting application of the discovery rule and dismissing plaintiff's claim based on the statute of limitations because it is not unreasonable to expect a plaintiff involved in researching and developing technologies to examine public patent records to determine "what its colleagues around the world are inventing and accomplishing").

Like the plaintiff in *WesternGeco*, Ferris also boasts of its extensive research and development activities, as well as having a "patent portfolio" and "outside patent counsel." Thus, even if Ferris was given the benefit of the discovery rule in this instance, tolling the limitations period from 2003 until 2005, the statute of limitations *would still have run* on Ferris's breach of fiduciary duty claim. For all of these reasons, Counts I and II of Ferris's Complaint should be dismissed, with prejudice.

---

[6] In addition to being considered part of Ferris's pleading for purposes of Carr's and Curaline's Motion to Dismiss, the Court can also take judicial notice of the publication date under Federal Rule of Evidence 201. *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 924 (N.D. Ill. 2013) (taking judicial notice of a copyright registered with the U.S. Copyright Office and noting that such documents are considered public records of which courts may take judicial notice).

### 2. Counts I and II of Ferris's Complaint Should Be Dismissed Because Ferris Does Not Properly Allege a Breach of Fiduciary Duty Nor a Breach of Contract

In addition to being time-barred, Ferris's purported claims for breach of fiduciary duty (Count I) and breach of contract (Count II) against Carr should be dismissed because Ferris does not properly allege a breach of fiduciary duty or a breach of contract by Carr. To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must allege (i) the existence of a fiduciary relationship, (ii) breach of a duty arising out of that relationship, (iii) damages and (iv) proximate cause. *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). The general rule in Illinois is that former employees are, absent a restrictive covenant, free to compete and act adversely to the interests of their former employer upon resignation. *Prudential Ins. Co. of Am. v. Van Matre*, 511 N.E.2d 740, 747 (Ill. App. Ct. 1987) (dismissing claim for breach of fiduciary duty where former employer failed to allege that former employee had engaged in any competitive activity while employed). To state a claim for breach of contract under Illinois law, a plaintiff must allege (i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant and (iv) resultant injury to the plaintiff. *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 611 (Ill. App. Ct. 1999).

Here, Ferris fails to properly allege a breach of fiduciary duty against Carr because (i) Ferris's alleged breach is premised entirely on Carr's allegedly "misappropriating" Ferris's "confidential information" and "know-how" and (ii) nowhere in its Complaint does Ferris identify any "confidential information" or "know-how" that was taken by Carr. On the contrary, the most that Ferris has alleged is that Carr filed a patent application (more than a month *after* his employment with Ferris ended), which application was (i) allegedly predicated on improvements upon Ferris's existing, publicly filed patents and (ii) rejected by the USPTO for being

8

CHICAGO/#2590761.1

"anticipated and obvious" over at least one of those patents. (Compl. ¶¶ 36, 47.) Simply stated, Ferris has not alleged, and cannot allege, any identifiable "confidential information" and/or "know-how" allegedly "misappropriated" by Carr during or after his employment with Ferris, which ended more than a decade ago in June 2003.

Ferris's breach of contract claim is equally defective. As shown by Ferris's own Exhibits to the Complaint, the internal "memorandum" from Roy Carr to "all employees" dated September 19, 2000, is not a contract, nor can it be construed as a contract. (*Id.* Ex. A.) The "Nonemployee Security Agreement" dated August 6, 1987—signed by Carr while he was a consultant/contractor before becoming employed by Ferris—*expired* by its own terms nearly two decades ago on August 6, 1997. (*Id.* ¶ 17 & Ex. B § 1(c).) Additionally, the "Employee Confidentiality, Assignment of Inventions and Nonsolicitation Agreement" dated February 1, 2000 is between Ferris and an employee named "Paul P. Zimmerman." (*Id.* Ex. C.) Carr is not a party to this contract.[7] (*Id.*) Lastly, the "Employee Acknowledgement" form signed by Carr on April 24, 2003, which confirms his receipt of Ferris's "Employee Handbook," expressly states that the "*Employee Handbook does not establish any contractual relationship . . . .*" (*Id.* Ex. D.) In short, Ferris has not alleged, and cannot allege, the existence of any contract between it and Carr. For these additional reasons, Counts I and II should be dismissed, with prejudice.

---

[7] Ferris alleges in paragraph 56 of the Complaint that Carr entered into "an Employee Confidentiality, Assignment of Inventions and Nonsolicitation Agreement with Ferris." (Compl. ¶ 56.) However, this conclusory allegation is belied by Exhibit C to the Complaint, which controls. *Personal Keepsakes*, 975 F. Supp. 2d at 924 ("To the extent that there is any conflict between the exhibits and the plaintiff's allegations, the exhibits take precedence."). Presumably, if Ferris had a contract that was, in fact, signed by Carr, then Ferris would have attached a copy of that contract (not Paul P. Zimmerman's contract) to the Complaint. That Ferris did not is telling, especially given that this is the second time Ferris filed the Complaint against Carr (first in Texas, and now in Illinois).

CHICAGO/#2590761.1

### 3. The Complaint Fails to State a Claim against Curaline for False Designation of Origin under the Lanham Act

To state a cause of action for false designation of origin or false advertising under the Lanham Act, a plaintiff must plead and establish (i) a false or misleading statement of fact about a product; (ii) such statement either deceived or had the capacity to deceive a substantial segment of potential customers; (iii) the deception was material, in that it is likely to influence the consumer's purchasing decision; (iv) the defendant caused the false statement and the product to enter interstate commerce; and (v) the plaintiff has been injured or is likely to be injured as a result of the statement(s) at issue. *Stahl Law Firm v. Judicate West*, No. 3:13-cv-1688, 2013 WL 6200245, at *6 (N.D. Cal. Nov. 27, 2013). A plaintiff who relies on allegations containing legal conclusions or a formulaic recitation of the elements of a Lanham Act fails to state a claim. *Id.*; *see also Just Add Water, Inc. v. Everything But Water, Inc.*, No. 04-CV-2085, 2005 WL 1206874, at *4–5 (N.D. Tex. May 18, 2005). This is exactly what Ferris has done in this case.

Paragraphs 63 through 65, which comprise Ferris's purported Lanham Act claim, consist of nothing more than legal conclusions and a formulaic recitation of the elements. Specifically, Ferris offers no facts to support its conclusions that (i) Curaline's products are "based on or derived from" confidential information or "know-how" allegedly "misappropriated" by Carr from Ferris *more than a decade ago, which resulted in a patent application rejected by the USPTO as "anticipated and obvious"*); (ii) Curaline is "offering products for sale in interstate commerce"; (iii) Ferris "has been and will be substantially and irreparably injured"; or (iv) actual sales "have been diverted" from Ferris to Curaline. (Compl. ¶¶ 63–65.) Indeed, these conclusions are strikingly similar to those contained in the defective Lanham Act claims, which the district courts dismissed in *Stahl Law* and *Just Add Water*. *Stahl Law*, No. 3:13-cv-1688, 2013 WL 6200245, at *6; *Just Add Water*, No. 04-CV-2085, 2005 WL 1206874, at *4–5.

10

Further, Ferris's purported Lanham Act claim against Curaline should be dismissed because it is based entirely on the defective and time-barred claims against Carr. (Compl. ¶¶ 63-65.) To be sure, each of the claims against Carr is expressly incorporated into Ferris's purported Lanham Act claim against Curaline. (*Id.* ¶ 62.) This includes the allegations that Curaline incorporated the information that the USPTO found to be "anticipated and obvious over Ferris 5,254,301 patent" in the '987 Patent Application, which was then published by the USPTO on January 20, 2005, *more than seven (7) years before Carr allegedly joined Curaline in November 2012*. (*Id.* ¶¶ 36, 39, 50.) For this additional reason, Ferris's purported Lanham Act claim against Curaline should be dismissed.

Lastly, by Ferris's own admission, Ferris does not consider "confidential information" and "know-how" to be confidential or proprietary after the passage of ten (10) years. (*Id.* ¶ 17 & Ex. B, § 1(c) ("[R]estrictions on the use and disclosures of Ferris's confidential information shall continue for ten years . . . .").) Thus, even if Ferris had stated a claim against Carr (which it did not), any information or "know-how" allegedly taken by Carr *in June 2003* would have ceased being confidential and/or proprietary to Ferris in 2013, when Curaline allegedly started to market its product. (Compl. ¶ 59 ("Curaline began marketing Devrasorb in 2013.").)

11
CHICAGO/#2590761.1

## **CONCLUSION**

As set forth above, Ferris's Complaint should be dismissed, with prejudice, because it is untimely and/or fails to state a claim for breach of contract, breach of fiduciary duty and/or false designation of origin under the Lanham Act. Accordingly, Defendants Roy Carr and Curaline, Inc. respectfully request that this Court enter an Order (i) granting their Motion to Dismiss; (ii) dismissing Plaintiff Ferris Mfg. Corp.'s Complaint, with prejudice; and (ii) awarding them such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Chad A. Schiefelbein
One of Their Attorneys

Chad A. Schiefelbein
cschiefelbein@vedderprice.com
Joshua Dunn
jdunn@vedderprice.com
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
(312) 609-7500