# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FERRIS MFG. CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 04663 |
| | ) | |
| ROY CARR and CURALINE, INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ferris Mfg. Corp. ("Ferris") brings this three-count action against Defendants Roy Carr ("Carr") and Curaline, Inc. ("Curaline"). Counts I and II allege state law claims for breach of contract and breach of fiduciary duty against Carr, and Count III alleges a claim under the Lanham Act, 15 U.S.C. § 1125(a), against Curaline. Currently before the Court is Carr and Curaline's joint motion to dismiss Counts I and II as barred by the applicable statutes of limitations, and to dismiss all three Counts for failure to allege a cognizable claim. For the following reasons, the motion is denied.

## BACKGROUND

According to its Complaint, Ferris manufactures and distributes various wound care products, including PolyMem®, Shapes,® and SportsWrap™, among other branded products. Compl., Dkt. 1, ¶¶ 10, 12. These products are allegedly innovative and the subject of several patents and awards. *Id.* at ¶¶ 10-11, 18. The Complaint further alleges that Carr became a chemical consultant for Ferris in 1987, thereafter "became a full-time employee," and "quickly became part of Ferris's upper management," interacting "directly with" Ferris's founder, Mr. Sessions, who was also its President and CEO at the time. *Id.* at ¶¶ 13, 17.

Between 1991 and 2003, Carr allegedly held various positions within Ferris, including "Manager," "General Manager," "'Advisor to President' Sessions," "Vice President of Operations and General Manager of Ferris," "Ferris's Chief Operating Officer," and "'Aide to CEO' Sessions.'" *Id.* at ¶¶ 17-26. In these roles, Carr is alleged to have been "heavily involved with the conception, development and commercialization of Ferris's patent portfolio concerning wound dressings," "involved in the development of new Ferris products," "a co-inventor" on various "Ferris patents relating to wound dressings," and to have "closely worked with other Ferris inventors (including Mr. Sessions) and Ferris's outside patent counsel regarding Ferris's patent – strategies [sic]." *Id.* at ¶¶ 18-19, 22. Carr is also alleged to have signed a "Nonemployee Security Agreement" promising to "use Ferris' confidential information only for the direct and sole benefit of Ferris," and the "'Ferris Employee Confidentiality, Assignment of Inventions and Nonsolicitation Agreement" ("Assignment of Inventions Agreement"), which all current and future Ferris employees, including Carr, were required to sign." *Id.* at ¶¶ 27-28, 56.

According to Ferris's Complaint, "Carr left Ferris on June 6, 2003." *Id.* at ¶ 32. Just over a month later, "on July 16, 2003, Carr and another former Ferris employee, George Worthley, filed a confidential provisional patent application with the USPTO." *Id.* at ¶ 33. About a year later, on June 30, 2004, Carr allegedly filed a continuing application, No. US2005/0013987 (the "'987 Patent Application"), claiming the benefit of that earlier provisional application, in which "Carr claimed he had invented a two-layer foam dressing." *Id.* "In the prosecution of this application, the Patent Examiner cited several Ferris patents as prior art," including three patents on which Carr was a "co-inventor," and eventually rejected claim 1 of the '987 Patent Application as "anticipated and obvious over" another of Ferris's patents. *Id.* at ¶¶ 33, 36. The Complaint further alleges that the '987 Patent Application "was later abandoned," *id.* at ¶ 38, but that Carr ("on information and belief") is now the Chief Operating Officer of Curaline, which

2

"competes against Ferris." *Id.* at ¶¶ 2, 8, 39. Curaline now markets a wound care product known as DevraSorb®, which allegedly "incorporates" the Ferris information that was included in Carr's '987 Patent Application. *Id.* at ¶¶ 2, 50.

Counts I, II, and III of Ferris's Complaint allege (I) that Carr "breached his fiduciary duty to Ferris by misappropriating Ferris confidential and proprietary information he learned of while employed by Ferris and incorporating it in the provisional application he filed in July 2003, which resulted in the '987 Patent Application and which Curaline has incorporated into its DevraSorb product," *id.* at ¶ 50; (II) that Carr breached his Assignment of Inventions of Agreement "by filing a provisional patent application containing Ferris' confidential and proprietary information just over one month after leaving Ferris; filing a continuing application based on that provisional application and disclosing that confidential information to Curaline," *id.* at ¶ 57; and (III) that "Curaline has falsely designated the origin and nature of DevraSorb products" by "representing to the market that its DevraSorb products are innovative and unique" and "by failing to disclose that they are based on or derived from know-how that Carr had misappropriated from Ferris." *Id.* at ¶ 63.[1] Carr and Curaline move to dismiss.

## ANALYSIS

### I. Motion to Dismiss Pursuant to Statutes of Limitations

As an initial matter, Carr asserts (and Ferris does not dispute) that Illinois' substantive law and statutes of limitations govern Ferris's state law claims. Mem., Dkt. 11, at 6 and n.4. The Court agrees. "Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive

---

[1] Carr and Curaline characterize this case as "a refiling of a previously dismissed action" brought by Ferris against them in Texas. Mem., Dkt. 11, at 1. The United States District Court for the Northern District of Texas dismissed that case on June 13, 2014 for lack of personal jurisdiction over Carr and Curaline. *See Ferris Mfg. Corp. v. Roy Carr and Curaline, Inc.*, No. 4:14-cv-121-O (N.D. Tex. June 13, 2014) (Dkt. 31 in that action) [hereinafter "Texas Order"].

law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). But when the issue is undisputed, the court may apply the law cited by the parties. *Id.* (party "acquiesced to the application of Illinois law" and thereby waived the issue); *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012) (courts "do not worry about conflict of laws unless the parties disagree on which state's law applies") (quoting *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009)); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2014 WL 4724387, *4 n.7 (N.D. Ill. Sept. 23, 2014) (applying Illinois law where party did not dispute, and thereby waived issue).[2] In turn, "[f]or procedural matters, including the statute of limitations, Illinois applies the law of the forum." *Moorehead v. Deutsche Bank AG*, No. 11 C 106, 2011 WL 4496221, at *3 (N.D. Ill. Sept. 26, 2011).

At issue here are Illinois' five-year limitations period for breach of fiduciary duty claims, 735 ILCS 5/13-205, and ten-year limitations period for breach of contract claims. 735 ILCS 5/13-206. *See Armstrong v. Guigler*, 174 Ill. 2d 281, 294, 673 N.E.2d 290, 297 (Ill. 1996) (five-year limitations statute applies to breach of fiduciary duty claims, and 10-year limitations statute applies to breach of written contract claims). As a "basic rule," a statute of limitations "is an affirmative defense" that "need not be addressed in the complaint." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004)). Normally, then, "the resolution of the statute of limitations comes after the complaint stage." *Id.* But this rule is

---

[2] The Court also notes that Carr and Curaline are alleged to reside in Illinois and to have "committed torts in Illinois," Compl., Dkt. 1, ¶ 5; Exhibit C to Ferris's Complaint indicates that Ferris was an Illinois resident in 2000, Dkt. 1-3, at § 13; and the Texas Order indicates that Ferris was located in Illinois during Carr's employment with Ferris and until 2012. *See* Texas Order at 2, 7. The application of Illinois law in this case is appropriate for these reasons, as well. *See Rosman Adjustment Corp. v. Bernay*, No. 12 C 8239, 2013 WL 453197, at *4-5 (N.D. Ill. Feb. 6, 2013) (breach of fiduciary duty claim likely governed by the law of the state where the "relationship was formed and developed"); *Houlihan v. McCourt*, No. 00 C 3390, 2002 WL 1759822, *4 (N.D. Ill. July 29, 2002) (breach of contract claim governed by law of state where contract was negotiated, formed, and initially performed, and where parties resided at that time).

4

subject to an exception where the issue "may be resolved definitively on the face of the complaint when the plaintiff pleads too much and admits definitively that the applicable limitations period has expired." *Id.* Carr seeks to invoke this exception here.

As noted above, Ferris's Complaint alleges that Carr's breach of fiduciary duty and breach of contract first occurred in July 2003, when Carr filed his provisional patent application allegedly "containing Ferris' confidential and proprietary information." Compl., Dkt. 1, ¶¶ 50, 57. This certainly would be more than ten years before Ferris filed this action, or the previous action filed in Texas on February 19, 2014, to which Carr concedes this action would "relate back." Response, Dkt. 11, at n.5. Without more, these allegations might suggest that Ferris's breach of fiduciary duty and breach of contract claims are time-barred. But the Court must also consider the following allegations in Ferris's Complaint:

- "Because the patent application process is not open to the public, Ferris was not aware Carr had filed the '987 Patent Application." Compl., Dkt. 1, ¶ 37;

- "Ferris also was not aware Carr had misappropriated Ferris's confidential information after he left Ferris." *Id.*

- "Ferris contacted both Carr and Curaline as soon as it discovered Carr was working at Curaline and that Curaline intended to offer a product similar to PolyMem." *Id.* at ¶ 58.

- "Ferris reasonably relied upon Carr's and Curaline's representations that its new product, which was not yet on the market, did not incorporate any of Ferris's confidential information and know-how." *Id.*

- "By failing to inform Ferris of Carr's prior patent applications, both Carr and Curaline fraudulently concealed that they had misappropriated Ferris's confidential information and know-how." *Id.*

- "Both Carr and Curaline purposefully concealed Carr's breach of contract." *Id.*

- "Both Carr and Curaline purposefully concealed Carr's breach of fiduciary duty." *Id.* at ¶ 51.

- "[B]oth Carr and Curaline actively misled Ferris, took active steps to prevent Ferris from learning about their misappropriation and fraudulently concealed that they had misappropriated Ferris's confidential information and know-how." *Id.* at ¶ 45.

*See Brown v. New York Life Ins. Co.*, No. 06 C 3339, 2006 WL 2989303, *1-3 (N.D. Ill. Oct. 17, 2006) (court must consider entire complaint, not merely allegations suggesting limitations bar, and "in the light most favorable to the plaintiff").

Based on these allegations, Ferris seeks to invoke various Illinois doctrines to spare his claims from the applicable statutes of limitations, namely: the "discovery rule," "equitable tolling," "equitable estoppel," and "fraudulent concealment." *See* Response, Dkt. 15, at 2-4. These typically are fact-intensive defenses to a statute of limitations and generally require factual development. *See*, *e.g.*, Taylor *v. Feinberg*, No. 08-CV-5588, 2011 WL 3157291, *8 (N.D. Ill. July 26, 2011) ("While Leila has not developed the argument as it relates to tolling of the statute of limitations in detail, at this stage, her pleading of fraudulent concealment satisfies the court that she should be allowed to proceed"); *Brown*, 2006 WL 2989303, at *5 ("whether the statute of limitations was tolled and whether the equitable doctrines permitting such tolling are applicable in the instant action involve an analysis that is beyond the allegations contained in the amended complaint that is before us"); *Tammerello*, 2005 WL 1323559, at *2 ("Plaintiff's complaint does support the inference that either equitable tolling or equitable estoppel might be appropriate in this case"); *White v. Kenneth Warren & Son, Ltd.*, No. 99 C 1740, 2000 WL 91920, *5 (N.D. Ill. Jan 14, 2000) (denying motion to dismiss because "[f]actual issues exist[ed] concerning the applicability of the Illinois Fraudulent Concealment Statute, the discovery rule, equitable tolling, and equitable estoppel.").

Seeking to avoid this factual inquiry, Carr counters that his statute of limitations defense succeeds as a matter of law, because Ferris's Complaint further "shows that the '987 Patent Application was published for the entire world to see by the USPTO on 'January 20, 2005,'" and

that such publication "constitutes constructive notice for purposes of the running of the statute of limitations." *See* Mem., Dkt. 11, at 7 (citing Compl. Ex. E (mistakenly referred to in Defendants' Mem. as Ex. C) and *WesternGeco v. Ion Geophysical Corp.*, No. 09-cv-1827, 2009 WL 3497123, at *5 (S.D. Tex. Oct. 28, 2009). "However, 'courts have reached different conclusions as to whether published patent applications confer constructive notice of their existence.'" *See Avery v. Barsky*, No. 3:12-cv-00652-MMD-WGC, 2013 WL 1663612, at *4 (D. Nev. Apr. 17, 2013) (citing cases and quoting *Onyx Pharm., Inc. v. Bayer Corp.*, No. C 09-2145 MHP, 2011 WL 7905185, at *9 (N.D. Cal. May 10, 2011) (citing cases)). Both sides acknowledge this split, but disagree as to whether the weight of authority favors one side or the other. Response, Dkt. 15, at 4-5; Reply, Dkt. 16, at 4 n.2. This Court concludes that it favors Ferris.

Carr cites one decision from another district, *WesternGeco*, 2009 WL 3497123 (S.D. Tex. 2009), which relied on a published patent application to trigger a statute of limitations in the context of a motion to dismiss under Rule12(b)(6). At least one court in this district has held otherwise, *see*, *e.g.*, *Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2009 WL 3366974, at *5 (N.D. Ill. Oct. 15, 2009) (granting reconsideration and reversing prior Rule 12(b)(6) dismissal ruling "that the issuance of the patent put [plaintiff] on constructive notice of its claims, thereby triggering the statutes of limitations"), and various others have expressly declined to follow *WesternGeco's* reasoning in a 12(b)(6) setting, and even on summary judgment. *See*, *e.g.*, *Avery*, 2013 WL 1663612, at *4 (citing *WesternGeco* and contrary decisions, and concluding "that it is not appropriate at the motion to dismiss stage to dismiss these claims on statute of limitations grounds"); *Onyx Pharm.*, 2011 WL 7905185, at *9 (citing *WesternGeco* and contrary decisions, and concluding that "issues of fact" precluded summary judgment on this ground).[3]

---

[3] By contrast, Carr's other authority, *Wang v. Palo Alto Networks, Inc.*, No. C 121-05579 WHA, 2014 WL 1410346, at *6-7 (N.D. Cal. Apr. 11, 2014), arose in a summary judgment

7

While this Court does not foreclose the possibility of summary judgment at a later juncture in this case, it reaches (based on the facts set forth in this Complaint) the same conclusion here as those decisions in this district and elsewhere holding that dismissal on limitations grounds under Rule 12(b)(6), based on the publication of a patent application to trigger the limitations period as a matter of law, would be inappropriate. *See*, *e.g.*, *Memorylink*, 2009 WL 3366974, at *5 (court could not determine limitations issue "based on the pleadings alone"); *Dallakian*, 2014 WL 3109964, at *7 (declining to impute constructive notice for limitations purposes because issue was raised in "the context of a motion to dismiss"); *Avery*, 2013 WL 1663612, at *4 (denying motion to dismiss because limitations issue "not clear from the Complaint" despite publication of patent application asserted to trigger limitations period); *OrbusNeich Med. Co., Ltd., BVI v. Boston Sci. Corp.*, 694 F. Supp. 2d 106, 117 (D. Mass. 2010) (denying motion to dismiss breach of contract and tort claims as time-barred, despite "a body of case law charging plaintiffs with inquiry notice of the entire contents of lengthy and complex publicly available documents"); *Capricorn Pharma, Inc. v. Matrixx Initiatives, Inc.*, No. 08-873-JJF, 2009 WL 2567022, at *4-6 (D. Del. Aug. 19, 2009) (denying motion to dismiss because "publication of a patent application [did] not provide the type of notice required to start the running of the period of limitations" and "more discovery" was needed on the issue) (citing *Synopsis, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923, 2005 U.S. Dist. LEXIS 46595, at *15-18, *22 (N.D. Cal. May 18, 2005) (denying motion to dismiss)).

One rationale underlying these decisions is "the essential prerequisite" to an imputation of knowledge upon a plaintiff of the contents of published material: "the plaintiff must have been

---

context and relied expressly upon evidence of the plaintiff's contemporaneous knowledge of the defendants' competitive activities. And here again, at least one other court has declined to extend *Wang's* reasoning to a motion to dismiss under Rule 12(b)(6). *See Dallakian v. IPG Photonics Corp.*, No. 13-11863-TSH, 2014 WL 3109964, at *7 (D. Mass. July 7, 2014) (citing *Wang*, but denying motion to dismiss because the issue "requires" a "more developed record").

under a *duty* to inquire into the contents of the relevant public records." *OrbusNeich*, 694 F. Supp. 2d at 117. Citing *WesternGeco*, Carr contends that, given its "extensive research and development activities," "patent portfolio," and retention of "outside patent counsel," Ferris "had a "duty to conduct a diligent inquiry into the published '987 Patent Application." Reply, Dkt. 16, at 3-4. The Court respectfully disagrees with that view. It would be unreasonable (that is to say, it would impose costs far in excess of any conceivable benefits) to impose a duty to monitor all patent applications on every company that maintains an active patent portfolio. A duty to investigate a patent application should arise "only when sufficient facts were available to provoke a reasonable person to investigate their contents," *i.e.*, "reason to suspect a potential misappropriation of its confidential information, such that it was under a duty to investigate the contents of [defendant's] published patent applications." *OrbusNeich*, 694 F. Supp. 2d at 117 (denying motion to dismiss: "this court finds it unreasonably burdensome to impose a duty to conduct this kind of searching inquiry, in the absence of evidence that some precipitating event should have provoked [plaintiff] to do so"); *Onyx*, 2011 WL 7905185, at *9 (denying summary judgment where there was a "lack of undisputed evidence that Onyx had reason to believe in 2005 that Bayer might be acting in contravention of its collaboration obligations"); *Synopsis*, 2005 U.S. Dist. Lexis 46595, *18 (denying motion to dismiss: "plaintiff "was not chargeable with notice of the publication" of the patent application "unless and until [it] had reason to suspect that its confidential information had been misappropriated). Hence, the inquiry is once again fact-dependent, and thus "must await factual development." *See Tammerello*, 2005 WL 1323559, at *2.

For these reasons, Carr's motion to dismiss Ferris's breach of contract and breach of fiduciary duty claims under Rule 12(b)(6) as barred by the applicable statutes of limitations is denied.

## II. Motion to Dismiss for Failure to State a Claim

### A. Breach of Contract

Turning to the "substantive" challenges to Ferris's claims, Carr complains that Ferris's breach of contract claim fails because Ferris failed to attach a copy of the pertinent agreement (the Assignment of Inventions Agreement) to its Complaint. According to Carr, "Ferris has not alleged, and cannot allege, the existence of any contract between it and Carr," because the Assignment of Inventions Agreement attached to Ferris's Complaint is instead "between Ferris and an employee name 'Paul P. Zimmerman,'" and "this is the second time" Ferris failed to attach the Assignment of Inventions Agreement between Ferris and Carr to its Complaint (once here, and once in Texas). *See* Response, Dkt. 11 at 9 and n.7; Reply, Dkt. 16, at 6. A plain reading of the Complaint in this case reveals, however, that Ferris has alleged that "Carr entered into" an Assignment of Inventions Agreement "with Ferris," and has further alleged that "Carr breached that agreement." Compl., Dkt. 1, ¶¶ 56-57. Ferris's failure (or inability) to attach a copy of the document neither negates nor undermines these allegations. *See*, *e.g.*, *Mitchell v. United Med. Sys., Inc.*, No. 10 C 6273, 2011 WL 1526985, *5 (N.D. Ill. Apr. 20, 2011) ("the Federal Rules of Civil Procedure—which do not require any such attachments—apply"); *TEKsystems, Inc. v. Modis, Inc.*, No. 08 C 5476, 2008 WL 5155720, *3 (N.D. Ill. Dec. 5, 2008) ("a plaintiff is not required to attach the contract to a breach of contract complaint") (citing cases).

Carr attempts to circumvent this principle by arguing, where "there is any conflict between the exhibits and the plaintiff's allegations, the exhibits take precedence." Mem., Dkt. 11, at n. 7 (quoting *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 924 (N.D. Ill. 2013)). But there is no conflict. The Court reads Ferris's Complaint as referring to Exhibit C (the Assignment of Inventions Agreement between Ferris and Zimmerman) as an example of that Agreement, "which all current and future Ferris employees,

including Carr, were required to sign," and which, "as Vice President of Operations and General Manager, Carr was responsible for administering." Compl., Dkt. 1, at ¶ 28. Notably, the Complaint does not refer to Exhibit C when alleging the specific Assignment of Inventions Agreement between Ferris and Carr. *See id.* at ¶ 56. Drawing all reasonable inferences in Ferris's favor (which the Court is required to do when deciding this motion, *see Personal Keepsakes*, 975 F. Supp. 2d at 923), the Court infers that Ferris entered into a separate Assignment of Inventions Agreement with Ferris, and that Ferris currently lacks access to that document. Dismissal at this stage would be "premature," therefore, "because the plaintiff would not have the benefit of obtaining the fully executed copy of the contract through discovery." *TEKsystems*, 2008 WL 5155720, at *3.[4]

## B. Breach of Fiduciary Duty

Carr's substantive challenge to Ferris's breach of fiduciary duty claim has two prongs. First, Carr argues that Ferris's claim "is premised entirely on Carr's allegedly 'misappropriating' Ferris's 'confidential information' and 'know-how,'" and "nowhere in its Complaint does Ferris identify any 'confidential information' or 'know-how' that was taken by Carr." Mem., Dkt. 11, at 8. Rather, says Carr, Ferris identifies only information made public by "Ferris's existing, publicly filed patents" and "rejected by the USPTO for being 'anticipated and obvious' over at least one of those patents." *Id.* at 8-9. But regardless of whether Ferris's patents or the USPTO's

---

[4] The argument first raised in Carr's reply—that Ferris further failed to allege specifically "when Carr entered into such an agreement" or "the existence and location of any such agreement," Dkt. 16 at 6—is both untimely (arguments advanced first in a reply brief are waived, *Nationwide Ins. Co. v. Central Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013)) and unpersuasive. The Complaint's extensive allegations concerning Carr's employment relationship with Ferris, and its specific allegation that Carr entered into an employment agreement during that tenure, like the agreement provided in Exhibit C, provide all the specificity the Complaint requires. *See Carlson v. Nielsen*, No. 13 CV 5207, 2014 WL 4771669, *4 (N.D. Ill. Sept. 24, 2014) (further "background detail" is "not required by Fed.R.Civ.P. 8(a) … or by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)").

rejections suggest an absence of confidentiality or a lack of trade secret status,[5] a breach of fiduciary claim does not require that purloined information rise to the level of a protectable trade secret. *Superior Envtl. Corp. v. Mangan*, 247 F. Supp. 2d 1001, 1003 (N.D. Ill. 2003) ("plaintiff may prove a breach of fiduciary duty by showing that a defendant used information gained during employment with defendant for his own use, even if this information does not rise to the level of trade secret protection."); *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 771 (N.D. Ill. 2009) (breach of fiduciary duty claim would survive if plaintiff "ultimately is unable to prove the existence of a trade secret"). As the Seventh Circuit has noted, "it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret." *SFK USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 718 (N.D. Ill. 2009) (denying motion to dismiss breach of fiduciary duty claim (quoting *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005)).

Carr also maintains that whatever information he took from Ferris, he did so "more than a month *after* his employment with Ferris ended. Mem., Dkt. 11, at 8. Here again, the law affords no comfort. The resignation of an officer (Carr is alleged to have been Ferris's "Vice President of Operations and General Manager," "Chief Operating Officer," and "part of Ferris's upper management," Compl., Dkt. 1, at ¶¶ 17-26) "will not sever liability for transactions completed after termination of his or her association with the corporation if the transactions began during the existence of the relationship or were founded on information acquired during the relationship." *APC Filtration, Inc. v. Becker*, No. 07-CV-1462, 2008 WL 3008032, *7 (N.D. Ill.

---

[5] While the Court need not decide here the trade secret status of Ferris's allegedly misappropriated information, it nevertheless notes that "it does not follow as a matter of law that something rejected by the PTO as obvious can never be part of a protectable trade secret." *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1195 (S.D. Cal. 2012) ("patent rejections based on prior art are not necessarily determinative of the fact that the claimed trade secret was generally known at the time") (citing *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F. 3d 1354, 1358 (Fed. Cir. 1998)).

Aug. 4, 2008); *MPC Containment Sys., Ltd. v. Moreland*, No. 05 C 6973, 2008 WL 2875007, *11 (N.D. Ill. July 23, 2008) (same); *Exhibit Works, Inc. v. Inspired Exhibits, Inc.*, No. 05 C 5090, 2005 WL 3527254, *3 (N.D. Ill. Dec. 21, 2005) (same). That Carr waited a month or so before filing his own patent application allegedly containing Ferris's know-how thus fails to insulate him from liability.

C. **Lanham Act**

Curaline's challenge to Ferris's Lanham Act claim is similarly two-pronged. First, Curaline contends that Count III "does not point to specific documents and brochures," Reply, Dkt. 16, at 6, and "offers no facts to support its conclusions" that Curaline's products are (1) "based on or derived from" Ferris's information or (ii) offered "for sale in interstate commerce," (iii) that Ferris "has been and will be substantially injured," or (iv) that actual sales "have been diverted" from Ferris to Curaline. Mem., Dkt. 11, at 10.[6] The Court understands this as an assertion that Ferris's allegations fail to meet the specificity requirements of Fed. R. Civ. P. 9(b), though Curaline does not cite the Rule. *See Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) ("Claims that allege false representation or false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b)."). The Court concludes, however, that Count III of Ferris's Complaint adequately alleges the "who, what, where, when, and how" of the alleged fraud, sufficient to satisfy Rule 9B). *See BlueStar Mgmt. LLC v. The Annex Club, LLC*, No. 09 C 4540, 2010 WL 2802213, at *3 (N.D. Ill. July 12, 2010).

---

[6] The parties appear to disagree as to whether Ferris's Lanham Act claim implicates the three-part false designation test recited in *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999), Response, Dkt. 15, at 9, or the five-part false advertising test recited in *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999), *see* Mem., Dkt. 11, at 10. The difference is not material to this motion, however, as Curaline's challenge does not rest on any one element of either test, but rather argues that the elements are not pled with specificity.

For example, paragraphs 40-42 of Ferris's Complaint cite Curaline's website and quote Curaline's marketing materials (which are attached to the Complaint as Exhibit F, Dkt. 1-6) claiming that Curaline's DevraSorb products are "innovative" and "unique." Paragraph 43 of the Complaint then cites Curaline's own Department of Health and Human Services submission conversely claiming that Ferris's PolyMem product was the "principal predicate" to Curaline's DevraSorb product, and that DevraSorb is the "substantial equivalent" of Ferris's PolyMem product. Paragraph 64 then alleges that "Curaline has caused its advertisements and DevraSorb products to enter interstate commerce by offering them for sale on the Internet and at national and international industry trade shows." Paragraphs 44 and 46 assert that Curaline's marketing efforts began in the second half of 2013. And paragraph 65 alleges that "Ferris has been and will be substantially and irreparably injured by the sale of DevraSorb products because sales of its PolyMem products have been diverted to Curaline." These allegations sufficiently allege a claim under the Lanham Act and Rule 9(b). *See Toddy Gear, Inc. v. Navarre Corp.*, No. 13 CV 8703, 2014 WL 4271631, *2-3 (N.D. Ill. Aug. 26, 2014) (allegations of marketing of defendant's product with false statements that "are material and influence purchasing decisions" sufficient to assert a discernible competitive injury).

Curaline next insists that Ferris's Lanham Act claim fails as a matter of law, because the Ferris information allegedly incorporated into Curaline's DevraSorb products is no longer "confidential or proprietary," due to (i) its publication in Carr's '987 Patent Application, (ii) rejection by the Patent Office as "anticipated and obvious," or (iii) the passage of time beyond that protected under Ferris's Nonemployee Security Agreement. Mem., Dkt. 11, at 11 (citing Compl. Ex. B, Dkt. 1-2, at § 1(c)); Reply, Dkt. 16, at 7. But the question is not whether the Ferris information allegedly incorporated into Curaline's products is independently protected confidential information, but rather, whether Curaline has misrepresented those products as

14

"innovative" and "unique" and by failing to disclose that they are instead "based on or derived from" Ferris's information. *See* Compl., Dkt. 1, ¶ 63; *Healthpoint, Ltd. v. Stratus Pharm., Inc.*, 273 F. Supp. 2d 871, 887 (W.D. Tex. 2001) (omission actionable under Lanham Act in combination with statement that is "affirmatively misleading, partially incorrect, or untrue as a result of a failure to disclose a material fact") (citing cases). Moreover, putting aside whether the Ferris information at issue is protected under Ferris's Nonemployee Security Agreement, Ferris alleges that this information was protected under its Assignment of Inventions Agreement with Carr. Compl., Dkt. 1, at ¶¶ 56-57, 60. Thus, to the extent Ferris's Lanham Act claim assumes Ferris has an interest in this information, the Complaint alleges one. *See SCI Illinois Serv., Inc. v. Mitzvah Mem. Funerals, Inc.*, No. 10 C 6111, 2011 WL 1595986, *3 (N.D. Ill. Apr. 27, 2011) (denying motion to dismiss Lanham Act claim, despite "expiration of the parties' non-compete agreement," where information at issue was still "subject to" Asset Purchase Agreement).[7]

For these reasons, Carr and Curaline's motion to dismiss Ferris's Complaint is denied.

Date: January 21, 2015

John J. Tharp, Jr.
United States District Judge

---

[7] Curaline's companion contention that Ferris's Lanham Act claim "should be dismissed because it is based entirely on the defective and time-barred claims against Carr," Mem., Dkt. 11, at 11, is both unsupported and puzzling. But in any event, those claims survive, so Curaline's derivative challenge does not.

15